Good morning, Your Honors. Ramiro Flores for Mr. Sanchez Mesa, arguing on behalf of the appellants. I'm going to attempt to reserve about five minutes for rebuttal for my colleague, Ms. Matheson, who is Mr. Soto-Barraza's counsel. All right, please watch the clock. Thank you, Your Honor. I'd like to start with the issue of attempt on count four. We obviously argued at trial that there was no attempt that was committed by our clients. If we sustained the verdict on count three, does it matter? No, Your Honor. On count three, regarding the constructive amendment? No, let's assume, as I understand it, and maybe I've got this wrong, the judge vacated some of the convictions because so as not to be double counting? That's correct. Was count four among them? No. Count three was among them. Count three was. Count four was the attempted robbery, which was the predicate offense for the felony murder in count one. And your argument on count four is? That it was insufficient evidence at trial that these individuals committed a substantial step, thereby committing attempted robbery. So as to that, why isn't it a substantial step to come into this area where you expect to find people that you're going to rob and then begin firing when somebody starts firing back? Isn't this all part of an attempt to commit a robbery? It is not, because when you talk about area, we're talking about an area that is miles wide, that by the government's evidence was numerous trails, numerous canyons. It's not a specific area. Now, obviously, the interdiction occurred in a specific area. But when they attempted this, or they entered this area, they had no evidence presented whatsoever that they believed they were going to find a specific target. But there was evidence that the smugglers went through that area. Isn't that right? There was no evidence that the only evidence that was presented at trial was that this was a target rich area. But when we keep saying the word area, we're not talking about a hundred by hundred yard. They got all of the equipment. This is what troubled me. They had all the equipment. They had the guns. They had their food supplies. And they were hunting. They went to an area where they thought their prey was going to appear. And if that's not an attempt, the next thing that would happen would be if the smugglers went through that area, they would rob them. And I don't think that you have to wait for the robbery to actually occur. So I guess my question to you is, what is it that had not yet been done so that when the prey, the smugglers appeared, the robbery would have occurred? Well, first, Your Honor, going back to the first part of your question, when you look at the cases, Buffington, Steele, Harper, all of those cases... Those are all bank robbery cases. So they're not hunting. We know where the bank is. Right. It's right there. I understand it completely. But those individuals prepared as well. It wasn't... They prepared. But I mean, when you're hunting something, it isn't like you can go surveil the bank. You have to set yourself up in the area where the query is going to come through. Right. But there was no evidence that these individuals were setting up in Mesquite Sea. Well, but they went... There's plenty of evidence that they went to this place with the intent to rob people. Well, Your Honor, you've got to remember that the evidence was... It may be a big place, but there's plenty... But, yes, there's plenty of trails. The individuals were crossing through this area. They weren't set up to camp in this area. So let's assume in a different context that your clients intended to rob a bank. Yes. And they went to the front door of the bank, but didn't go in, because that's where the money is inside. Right. They didn't go in. They went to the front door of the bank, and they were apprehended there. Would that be enough for attempted bank robbery? Yes. According to the case in Moore, it would be... So here they went to the place where they expected to find the victims. And? So why isn't that exactly the same? Well, because this area is so large, and there's no particular target in sight. When somebody walks into or up to the front door of a bank, that bank is their target. But we know where the bank is. I mean, when you're hunting something, you can't go to where the prey is. You have to go to the area where the prey may be found. I've gone elk hunting five times up in the Tucannon. I've never seen an elk, never shot one, never hit an elk in my life. Would you say I wasn't attempting to hunt? I had the gun. I was camped up. I was ready to find an elk. Is it just the unidentified victim? Well, the object of hunting is to kill an elk, obviously, to harvest an animal. And you can't attempt to harvest an animal until you actually have one in your sight. And that's the difference between... So it's the seconds before he sees it in his sights, and the second before he pulls the trigger, which is the attempt. Is that what you're saying? No. It doesn't have to be seconds. As the Court or Your Honor would know, sometimes, once you see an animal to harvest, it normally doesn't – it can take seconds. So if you miss, you have to shoot at it, but if you miss, it's an attempt. No. No. You have to see it? You have to see the victim in order to commit an attempt? You have to have a target. I believe... A case that says you need an identified victim for an attempt. No. But when you look at every single one of the cases that we cited, that we cited, and actually even the government cited, that dealt with armed robbery or any type of robbery, there was always a particular target. Let me ask you something that relates to this. Both counsel, both you and counsel for – co-defendant or counsel for Lionel Sanchez Mesa and Sotomayor said, in effect, in their openings and to the Court, we're guilty of Hobbs Act conspiracy. We concede that. What we're not guilty of is the more serious stuff. So given that concession, what – I don't know that it's waiver. The government says it's waiver. I don't know that it's waiver. But what are we to make of that concession? Well, the concession was – well, when we agreed to the – that there was an agreement, it was to the robbery as in the indictment. However, I think we're getting now into... No. Put aside your constructive amendment, Your Honor, for a second. Okay. You said we agree that we did what Count 4 describes. No. No. No, no. Count 4 describes attempt, Your Honor. Yeah, Count 3. Count 3, Your Honor. You conceded to Count 3 conspiracy, opening argument in a trial, a closing argument. So you agreed that you did what Count 3 says? Correct. So is it your position today you should be convicted on Count 3 but not Count 4? Well, Your Honor, the sufficiency – the argument for our sufficiency of evidence only goes to Count 4, not to Count 3. Okay. So as to Count 3, you essentially admitted guilt. Yes. At trial, yes. Okay. So what difference does this all make? Because, Your Honor, because the reason we're asking the Court to reverse Count 3 is not on the insufficiency of the evidence. It's because of the constructive amendment. I understand. I understand. But if we were to sustain Count 3, this would – this argument would be essentially irrelevant, wouldn't it? As far as Count 4? As to Count 4. No, Your Honor, because, again, conspiracy is not attempt. Conspiracy is just an agreement. The attempt in Count 4 was never consummated because there was never a substantial effect. I understand your argument. I'm just trying to figure out what difference this makes in the larger scheme of things, since you admit that you committed Count 3 conspiracy. Right. Well, in the larger picture, Count 4 is the basis for Count 1 first-degree murder. So you – So the district court expressly said to the jury you should consider Count 4 as the predicate. Is that right? That's correct. And then – and Count 3 is not – I mean, Count 3 could have been potentially, but it was not presented to the jury. No, it's not, Your Honor. Count 3 could not have been a predicate offense for Count 1. For a felony murder. For felony murder. Okay. Because the only count that sustained the first-degree murder charge was Count 4. Okay. None of the other offenses was a predicate offense to Count 1. Okay. I understand your argument. Okay. So that being said, when you look at all the Bain cases, when you look at Buffington, Steele, Harper, all of them not only had a particular target, but they had movement towards that particular target. What we've argued here, and I understand that the Court's already questioned me on it, but what we've argued here is simply that without a particular target and without any movement towards that particular target, without any real immediacy – and real immediacy has been expounded a couple – or expanded on a couple of cases. In Harper, they talked about it was 90 minutes away, this robbery. Here, we had evidence that we had no idea when this robbery might have occurred. We had evidence that these individuals had just started on this endeavor. We had evidence and argument by the government that this could have happened a day, a week, sometime later. So here we have none of the things that are in Buffington and Steele. What are we to make of the gunfight? Is that part of the attempted robbery? No. Why not? Well, simply because the gunfight was a reaction to the agents firing upon this group with beanbags, with beanbags, by shotguns. And I argued at trial that that was – that the gunfight was in response to being fired upon by the agents. And that's a good argument. I guess my question is, if you go out – and nobody doubts – you go out with the intent to rob some people, and you run into some people who fire on you, is that a reasonable inference for the jury to say that all your firing back is part of your – part of your continuing attempt to commit a robbery? No, because I would be the same to say that if in Buffington, when they were approached by the officers, then they began firing at the officers, and that was part of the attempt. I believe the attempt ends – or the attempt ends – or the possible attempt ends at the interdiction. And in Buffington and Steele and Harper, all of these cases, there was an interdiction. But the interdiction wasn't the intervening cause for the attempt not to happen. And all of those cases held that. You know, there is – there was nothing analytically similar from this case that can be said. There was movement towards a certain particular target. In these cases, there were banks or markets or something to be robbed. Yeah. All of the cases there seemed – both that – both you cited and the government cited, it seemed like there was a – the whole crime was aimed at a nonmoving object, a bank or some structure. With the exception of – I think, was it more the one with the cocaine one? And there, it seemed analogous to this, which is that they had done everything that was necessary to sell drugs. There just was a shortage of supply, and the court said that was enough for an attempt. Well, no, because we don't believe that Minkoff is analogous, first of all. Minkoff, yes. That's right. Minkoff is analogous simply because, one, there's a plethora of bank cases that are way more analogous to this type of – Well, bank cases did not seem analogous to me at all to this hunting thing, which is what your client was doing. Right. There was no – there wasn't, like, a building where drug smugglers were living or were working that you could go up to and rob drug smugglers. So I don't see how the bank cases didn't seem at all analogous. Well, let me put it this way, Your Honor. In this case, we have what we would consider a moving target. And there was a case that was cited by the government, I believe it was Baratovic, that had to do with a Wells Fargo or maybe an armored truck. In this case, they didn't do everything they could possibly do because they still had to focus on a particular target before they could attempt to rob that target. I understand that they could arm themselves, they could prepare themselves, they could find – get food. Well, they did something more. They didn't just arm and prepare themselves and talk about it here. They went to the place where they expected to find the target. Right. It was a big place. I take your point. But go back to Judge McShane's question. If they were charged with attempted hunting on a Federal reservation and they went out with shotguns on the reservation and they saw no deer, wouldn't they have attempted to hunt? Well, I think the crime would be actually harvesting or attempting to harvest an animal, not necessarily just hunting. Well, no. You see, you don't get to change the hypotheticals. So let's assume that the crime – that there's no hunting allowed on this Federal reservation. Right. And they go out with their shotguns and they look for deer. And they're charged with attempted hunting on the reservation. Haven't they done – haven't they completed the crime by going out there and looking for the deer? No, because again, I think the case law that we have in front of us requires more than just preparing and then going to an area. For example, in USUNTHORN, they talked about counter-surveillance not being a substantial step. In BUFFINGTON, they talked about – But they weren't just doing counter-surveillance here or surveillance. They weren't surveilling the area. They were searching for their prey. Which is similar or almost exactly the same as reconnoitering, which was done in BUFFINGTON. In BUFFINGTON, they drove – the security holes and the like. I mean, the action here was they were ready to go. They were just waiting for the query to appear. Well, they were moving. So actually, they're probably perhaps – if taken the facts in the most favorable to the government, they were hoping to find someone. But again, they had no – they had no – there was absolutely no evidence. They had any knowledge about where a target would be in this vast area of the desert with numerous trails and numerous canyons. And I don't want to use that word. It's back to the gunfight where they are willing to shoot it out with the police to further their activity. I – you know, I disagree with that statement simply because we had more than ample evidence that the agents believed that they would drop and run. And I believe that this particular firefight was induced or was at least somehow provocated on the fact that the agents started firing first with the beanbags. Of course, that was not deadly force, but there was no difference in the middle of the night with no light to see what was going on. There was evidence that they shouted police – at least one person testified that they shouted police. Right. And there was evidence that it was almost simultaneously said with the shotgun beanbag shots. Let me change – again, to give you a slightly closer hypothetical. Two robbers decide that they're going to go to Beverly Hills because that's where the street corner until a Mercedes comes by. And they go there and they've got the guns and they're waiting. Is that attempted robbery? Not until they see a particular Mercedes? No, no, not until they shoot up the Mercedes. No, not until they actually see one to actually rob. Because again, I think the thing is, is that we have to have a particular target and then they have to be some action towards that. Some actions analytically similar to walking towards the bank. Is it when the Mercedes rounds a corner or is it when they have it in their sights and they shoot at it? Well, I'm not – a robbery doesn't always mean shooting, Your Honor. Well, I'm going to say that they're going to shoot out the tires in order to – Whatever the plan is, I don't – I don't know. It's his hypothetical. You have to see – but your view, and I think you're clear on it, is that unless you actually see the intended victim, the robbery hasn't – an attempted robbery hasn't yet occurred. Well, you don't have to – you don't have to see the intended victim. I think you have to have a particular target in mind. Or if – You have to either identify a victim or see a random victim. Right. Well, it doesn't have to be random, but it has to be a particular target. And let me just give you this hypothetical. And this is something – or not hypothetical, but something analogous. If I intended to rob a Wells Fargo armored truck in the City of San Francisco, or any armored truck in the City of San Francisco, or in Tucson to do so, I get all the equipment that I need, whether it's a weapon or a – everything that I need to do it – a weapon, wig, mask, whatever. And I travel to the City of San Francisco. I have no idea of the route or the location of these Fargo trucks. Let me add to your hypothetical, because I get to do this. Okay. And so you go to an overpass in San Francisco where you're pretty sure that Wells Fargo trucks pass beneath. And you set yourself up at the top of the overpass waiting for the Wells Fargo truck. You don't know when it's going to come, but you have pretty good knowledge that this is the area where Wells Fargo trucks come by. Is that an attempt? Well, no, because – I mean, there's no evidence – Well, that's because that's what your clients did. They set themselves up in an area to wait for people to come by. They travel to an area. And again, if I were to travel to San Francisco without any knowledge of any particular truck – No, you – and I'm saying you leave your hotel room. Right. You're not just sitting – you go to the – you go to the street corner where you expect the Wells Fargo trucks to come by, and you're sitting there with your rifle waiting for them to come by. My question is, is that an attempt? If I had actual knowledge that there was a truck going to be coming by – No, all you know is that trucks often – well, it's my Mercedes made – you know, it's a bank robbery. This time you know that Wells Fargo trucks normally come by this corner. Right. Under that scenario, it could be an attempt. But this was not an attempt. This was not a scenario where they were camped out on a specific location. They were walking through a canyon that the – happened to also have an interdiction team from the United States Border Patrol. So it's not the same because here we have someone moving, and that was called patrolling by the government. And again, I think patrolling is the same as reconnoitering, and it's the same as counter-surveillance. And in those cases, citing those facts, there was found no attempt. I'd like to talk briefly about the constructive amendment. You're in your co-counsel's time for rebuttal. Okay. Well, I do want to talk about the – real briefly about the constructive amendment. I think there's – it was plain error. It was substantially prejudicial. Didn't you submit the instruction? We jointly submitted the instruction. Yeah, okay. So how can we have plain error? If you say to the district court, please give the jury this instruction, and the jury gives that – and the judge gives that instruction, how can that be plain error? Well, Your Honor, I think there's a case, Perez, that basically said that it's forfeited error, not waived error. So, I mean, here – the plain error standard still applies. But we have – the plain error, it has to be error that's plain. And we have – the defense counsel thinks the instruction is okay. The Ninth Circuit Committee for Model Rules thinks it's okay. How can it be plain error or error that is plain under those circumstances? Because when you look – when you look at the instruction, and when you look at the law of attempted robbery, and when you look at the two, there is no reconsideration between the two. But wasn't there ample – there was – go ahead. How doesn't this instruction capture the elements of robbery in this case? Okay. Because you induce in this set of facts has to be a taking by force. Well, not only – well, induced, yes, but it also requires against his will for robbery. It also requires fear of injury. So what you're really – it's not really a constructive amendment case, in my view. What you're really arguing is that the robbery instruction misstated the law. No. I mean, the indictment charges attempted robbery, correct? Yes. And the judge instructed the jury on robbery. No. He – he instructed the jury. Well, he used the word – the judge said you must find that they committed robbery. Right. And here are the elements of robbery. But the elements were the elements of extortion. I know. The elements – you think the elements were wrong, that they were the elements of extortion. Yes. So he didn't really change the – he didn't really change the charge. Your argument is that he gave the wrong instruction to the jury. No. There was no evidence of extortion, was there? Was there any at trial? It was all evidence that they were preparing to take the drugs by force. No, there was, because of the evidence that I suggested earlier where – They had photos of the drug smugglers with their mistresses that they were going to use for blackmail? No. Well, you can use force as – or a threat of force as part of extortion as well. It's also an element of extortion. The evidence that was suggested by the – by my cross-examination of the government's expert was that individuals been confronted by armed individuals would drop and run. In other words, they would voluntarily give up their marijuana and leave. And that wouldn't be robbery because they wouldn't fear injury if the robbers had guns. Right. No, it would be extortion because if they're doing it voluntarily – Voluntarily at the point of a gun? That's interesting. Just seeing the gun or just being approached by armed individuals, not necessarily pointed at. But in the end, what the real issue here is that the instruction is an extortion instruction. Well, I understand your argument, but I don't understand your constructive amendment argument. They were charged with robbery. The judge told the jury they had to find robbery or attempted robbery. And then, in your view, the judge gave them an instruction that didn't have the correct elements for robbery, but rather had the elements for extortion. Right. And that is the same – How does – how is that a constructive amendment? It's just an erroneous instruction. No, it's not – it's not only is it erroneous, but it's also a constructive amendment. Well, tell me what case says that giving the jury the wrong – giving the jury an instruction with the wrong elements of the offense is a constructive amendment. There's the United States v. Peel, which is an Eleventh Circuit case, which is almost – almost the same. But in Peel, doesn't the judge instruct the jury about a different crime as opposed to the one that was charged? And that's exactly my argument. And there was evidence of a different crime in that case. Right. And here we're arguing the same. Here you're arguing there is evidence of extortion. Right. Because of the fact that – But only to the extent that extortion looks like robbery. Well, there – I mean, it's a razor's edge. I mean, it is literally a razor's edge. And not only that, but the government also argued in their closing that they were going to use intimidation along with the fear of actual violence to obtain this property. So not only is it part of the evidence, but it's also part of the government's intention. And I appreciate your argument, so I don't want to – I don't want to trivialize it. But if a robber – excuse me – if a robber comes up to me and says, your money or your life, and I give him my money, that's extortion? Yes. I actually have to say no before it becomes a robbery? Well, no. I mean – well, I think it's – well, it's robbery, but what they were instructed to was extortion. I mean, I think it's plain, it's prejudicial, because if it constructively amended the indictment, then now we're talking about a Fifth Amendment grand jury clause violation, which is a fundamentally – fundamental right to fair trial. It's a substantial right, and therefore the violation of that right is a substantial prejudice, and it also calls into question the fairness and integrity of the judicial proceedings. We took you over your time. We'll give you two minutes for rebuttal for your co-counsel.  Good morning. May it please the Court. David Lesheny for the United States. I'd like to begin, if I may, Judge Acuda, by answering your question asked early in my colleague's argument as to what was left for appellants and their fellow RIPP crew members to do to carry out their plan, and the answer was nothing. The only thing missing from their equation was they – they had not yet found drug traffickers to rob. Well, that's not nothing. Your colleague says that's – that's an important something. Why – why isn't it an element of the offense? It's not an element of the offense because when this Court looks to substantial step, the Court looks to the actions of the defendant and determines whether those actions show that the crime will occur unless interrupted by independent circumstances. The fact that the RIPP crew had not yet found their prey does not change the host of steps that they took to effectuate their plan, which culminated in Mesquite Sea in the dead of night when they were carrying their loaded assault rifles – and this is an important fact that did not come up in the opening – at the ready position. There was testimony from Agents Castaño, Fragosa, and Keller that when the RIPP crew members came through the wash, they were armed and they were carrying their rifles at the ready position. They didn't have their assault rifles slung over their shoulders. If they were slung over their shoulders, would this not be an attempt? No. So, I mean – But – I didn't mean to interrupt you. I'm not sure why you're arguing that. It seems to me, and your theory of the case, if they were slung over their shoulders, they would still be – have committed an attempt, would they not? I would agree with that. However, this is additional evidence supporting the jury's conclusion that these defendants were ready, willing, and able. At that moment that they encountered the BORTAC team to commit the robbery. Are there any cases – so, the theory of opposing counsel is that absent an identified victim, there can't be an attempt. You have to at least identify the victim. Are there any cases in which the victim was not identified where we've held there was an attempt? I'm not sure under this Court's case law, and part of the reason for that, Your Honor, is that the majority of this Court's cases that we were able to find occur in the context of a bank robbery. Right. You go to the building, and there it is, and then you – how far along are you on your plan to rob it, which isn't like this sort of hunting-type scenario. I am unaware of a case from this circuit that is of the same or analogous facts involving hunting for the victim. I would note that this Court has held, in United States v. Temkin, for example, that impossibility is not a defense to attempt. And I think that is an important point, because whether or not there were, in fact, drug traffickers in Mesquite Seap on the night of December 14th is in and of itself an independent circumstance that does not diminish what these appellants did to carry out their plan, the host of actions that they took, beginning in Mexico, crossing the border illegally, walking 11 miles north. So tell me where along the way – everybody admits there's a conspiracy to commit robbery here. At what point does the conspiracy mature into an attempt, in your view? No later than the point at which these defendants and their fellow RIPP crew members retrieve their loaded firearms and proceed toward Mesquite Seap. I think it is arguable that when they cross the border, committing an illegal act in furtherance of their plan, that that in and of itself could demonstrate the firm commitment to complete the robbery, because this Court's case law is – to the extent I read the cases, I have not seen a case talking about an illegal act in furtherance of an attempt that could constitute a substantial step. So that's – that is an important point, but certainly by no later than the point at which they have their loaded assault rifles and are proceeding toward Mesquite Seap. And if I may, Your Honor, Mr. Flores, in his argument, posited that, well, this testimony about a target-rich environment refers to a huge area, and I respectfully submit the record shows otherwise. The testimony of Agent Weatherby was specifically toward the vicinity of Mesquite Seap, and that is from SCR 1369, where he talks about the seizures that he's made, over 100 seizures. Are these observations you made while personally participating in narcotics seizures in the area, in the vicinity of Mesquite Seap? Yes. Continuing to SCR 1372, are there documented foot trails in the vicinity of Mesquite Seap, Agent Weatherby? Yes. In your experience, are those foot trails used by drug traffickers? Yes, they are. Was that also true in December of 2010? Yes, it was. Although I take it Mr. Flores' argument, using the Mercedes sort of analogy, is it really doesn't matter whether it's a limited area. It's not an attempted robbery unless you have an identified victim or you — unless you have an identified victim, whether you see that victim or not. I actually agree with Mr. Flores for an entirely different reason. It was the government's position that Agent Weatherby's testimony about the documented drug traffickers in Mesquite Seap was not in and of itself essential to show a substantial step. It certainly provided additional evidence from which the jury reasonably concluded a substantial step existed. But it is what these defendants did that is of critical importance. And to take the analogy, Your Honor, that you drew, where an individual intends to rob a Wells Fargo truck. And as in this case, there is testimony that Wells Fargo armored trucks take a particular route away from a bank. And the defendant retrieves his loaded assault rifle and sets up at the ready position, waiting along that known route. That absolutely is a substantial step in furtherance of the attempt. It is squarely consistent with the rationale for a substantial step that this Court articulated in Hernandez-Cruz v. Holder. It clearly allows a reasonable observer to distinguish between someone with criminal intent and those without. And the jury in this case rationally concluded that the defendants engaged in a substantial step in furtherance of their admitted plan to commit armed robberies of drug traffickers. And the Court has noted there was no dispute as to their intent. That was clear from Mr. Flores's opening statement. Sotomayor, they don't dispute that that was their intent. It was clear from even the cross-examination of Agent Polly regarding Defendant Sanchez-Meza's written declaration where he specifically says, we intended to take drugs from the backpackers at firearm point. And that's SCR, I believe that's 2116. That was even on cross-examination. Can I ask you a question about a topic that may not turn out to be very important? But on count nine, they were convicted of using a firearm while during a crime of violence. Yes, sir. And we have a couple cases in which the question, which attempted whether Hobbs Act robbery is a crime of violence under the residual clause, if the residual clause remains constitutional. Should we wait for those cases to come down before we address that count? Your Honor, I believe this Court should wait for the Supreme Court to decide. The Supreme Court's got DiMaia. Yes, sir. And that's a little bit different, but that's why we're holding similar cases, because we're waiting for DiMaia. If the government agrees, we should not adjudicate count nine until that issue is made clearer. We do so agree with that. And I would note, of course, that... I didn't want to take you off track, but I wanted to make sure we touched on this. No, the government does believe it would be appropriate to wait for resolution of DiMaia and the Hobbs Act robbery cases. Obviously, the instruction as given was in accord with the United States v. Mendez, but the Supreme Court's decision in DiMaia, it is expected, will resolve that issue. We have several cases lined up that have priority over this one once the Supreme Court issues DiMaia, so... Correct. You're at least third in line, I think, by my calculations. Fair enough. If I may, Mr. Flores was asked a question about whether the gunfight, the exchange of gunfire, is relevant to the substantial step, and the defense position is, no, no, it's not, and I would respectfully differ with that. The fact that these defendants were willing with their assault rifles at the ready position and the evidence at trial was that there was no noise before Agent Castaño announced policia, and when he announced, the defendants with their rifles at the ready position turned toward the agents with their guns pointed at the agents and there was an exchange of gunfire. So why is that a substantial step towards robbery as opposed to an essential step towards assault on police? Well, it's both, and it's the government's position that the defendants would be liable for attempt, notwithstanding the exchange of gunfire. But in response to Your Honor's question about is the gunfire relevant to as additional evidence proving the existence of the substantial step, the answer is yes, in the government's view, because it is further evidence of the actions that these defendants are willing to take to effectuate their plan. It is the substantial step conduct that demonstrates a firm commitment to the robbery and it firmly corroborates. How do you deal with Buffington? Buffington is distinguishable for a number of reasons. I will go through them quickly. The conduct in Buffington was entirely different from the conduct here. The defendants in Buffington parked their car about 150 feet away from a series of businesses. One of the defendants went into a nearby Payless shoe store. Two of the other defendants sat in their car and then stood outside of the car. There was an electrical or power outage and they drove away. And what this Court found critical in Buffington, first, there was insufficient evidence that defendants intended to rob a bank. They were charged with bank robbery. There was insufficient evidence that they intended to rob a bank as opposed to another business. And the second aspect of the Court's opinion, with respect to a substantial step, the defendants' actions were, in this Court's words, tentative and unfocused. They never made a move toward the bank and they never showed their weapons, as distinguished from United States v. Moore, where the defendant is walking toward the bank with a ski mask and a gun. And what these defendants did in this case is far closer to United States v. Moore in that not only have they retrieved weapons, they are walking with their weapons at the ready position in the area where drug traffickers utilize foot trails to smuggle marijuana. To the extent the bank robbery cases are analogous, Your Honor, there's not just movement toward the bank in this case, which would be sufficient to sustain an attempt at conviction. They're in the bank. They are in Mesquite Seat. They are in the bank looking for the vault to empty. And that is the manner in which Buffington and Still and Harper are distinguishable because in none of those cases was there movement toward the bank. But your question does highlight, in some respects, the difficulty of importing bank robbery cases into this context of hunting victims in the Arizona desert. And this Court's recognition that, in United States v. Scott, that the substantial step analysis is so fact-specific that each case, of course, must be judged on its own facts and there cannot be a litmus test. And I understand this Court must look to its own precedent in the bank robbery cases. To the extent they inform the Court's view, support the finding of a substantial step here. But in addition, on these facts, to go back to Your Honor's question, there was nothing remaining for these defendants to do. When the victims, had the victims appeared either before Bortak had seen the defendants, it was a virtual certainty that an armed robbery was going to occur. And to be clear, there is nothing, there's no extortion here. Walking into a bank and pointing your gun at a bank teller and saying, hand over the money, and the bank teller then hands over the money, that is a robbery. That is not extortion. This is not like United States v. Carbo, where there were threats about, hey, pay me the money that you owe me from a boxing match from 2,000 miles away. Or Your Honor's question, Judge Ikuda, about, I'm going to post photographs of your mistress unless you pay me money. This was to be a taking of marijuana from the backpackers against their will. And the evidence was consistent with robbery, and only robbery in this case. So would you deal with the instruction? We now have a model instruction that deals with Hobjack robbery. But in those days, I guess it was more designed like an extortion instruction. So I'm not sure there's anything wrong with the instruction analyzed under a deferential light, but would you deal with the instruction? I would, Your Honor. And I would say this. Everyone is in agreement that plain error review applies here because both parties do. Sotomayor, does it apply? If the error was invited, does plain error review apply? Your Honor, I'm always reluctant to give up a potential argument, but it is the government's position that, looking at the facts of this case in light of United States v. Perez, that the waiver isn't the intentional relinquishment of a known right. And there are cases from this Court where, even though the defendant proposed the instruction, that may not be enough to say that the error is forfeited. Fair enough. So why wasn't it plain error? It wasn't plain error because the error, first, in the government's view, was not plain, especially under this Court's new model instruction, 8.143A, which is functionally identical to the robbery instruction given by the district court in this case. So could you clarify, though, what is the error? Is it your position that the instruction doesn't capture the elements of robbery in this case? It is our position that an ideal instruction would specifically say against the victim's will, the taking be against the victim's will. And we forthrightly acknowledge that. There was no finding a jury could make otherwise. That is absolutely right. And that's why that there could be no prejudice, which is the third prong of plain error review. But we were reviewing for, let's assume that an objection had been made to the instruction. Would we reverse? Absolutely not. You would not reverse under Nieder v. United States, because even if this Court were applying harmless error review, it is clear beyond a reasonable doubt that any error would have been harmless. That much is clear from Nieder itself, where the Supreme Court there faced an instruction that did not include the element of materiality, and the Supreme Court noted that the evidence of materiality was undisputed. In fact, the appellants in that case never challenged or raised the issue of materiality. And even in United States v. Conti, which was a plain error case, but this Court was actually articulated the standard of Nieder of strong and convincing evidence, this Court found that even where the defendant challenged the element of dishonest or deceitful means for purposes of a 371 conspiracy to defraud the government, the evidence at trial was strong and convincing that the defendants acted with deceitful and dishonest means. Well, the defendants admitted that they intended to rob. And the evidence is even stronger here. There was no dispute that these defendants were out to commit a robbery, to take property from the backpackers at gunpoint. And for that reason, even if there could be some conceivable error in that the instruction did not specifically say against the drug trafficker's will, there was no other conclusion to be drawn in this case. The conviction would be affirmed under either harmless error review if there had been an objection. Of course, there was not. It absolutely survives under plain error review. Unless the Court has further questions for me, I would submit. Apparently not.  Okay. We'll give you two minutes for rebuttal. May it please the Court, Andrea Matheson for appellants. The government itemized five steps that the appellants took that constituted in their mind a substantial step. Five and only five. And those were also referenced in the order by Judge Brewery at the district court, why, in fact, the Rule 29C was to be denied. And those five elements, those five steps, under the precedent of this circuit, cannot reach that substantial step. Not only was there a problem with this vastness of this area, the most important thing is, first of all, it relies on a target-rich determination, which was actually testified to ex post facto. And that necessarily is the only situation that the government would be required to show, is that this is a target-rich area for it to be a substantial step. Congress could not have intended that this massive area be a place in which there's no notice, no signs, there's numerous foot trails, a million and one places to hide things. There just has to be some ---- How big is the area? You keep referring to massive area. How big is it? Well, the area is 11 miles north of the border. Right. So ---- But we're talking about a canyon. Right. How big is the canyon? And you'll see in you can actually see in the evidence ---- I did look in the record. It didn't strike me that the canyon was enormous. If you look at ER 438D, I believe it's about five square miles. And it's very treacherous terrain. So, but not only do we have the problem with ---- But isn't the area in which the drug traffickers would necessarily have to wend their way through the canyon a rather limited area? No, absolutely not. Please look at excerpts of record 438D and see some of the different footpaths that the agents were able to map out. But more than the issue with regard to the space, I also wanted to mention there has to be some determinate amount of time. And time is very crucial in this case because the government even conceded that it could have taken days or even a week. And that cannot be that razor edge line in order to have proper immediacy like we saw in Cruz Hernandez. And in Cruz Hernandez, there was that specific finding in that case was that there had to be some immediacy. There was just so much speculation, so many intervening events that could have taken place. And then I just want to quickly go to constructive amendment and the erroneous jury instruction. You're over time, so please just a few sentences. The instruction was a suggestion to all parties, including defense counsel, government, and the jury. It was a suggestion in the wrong direction. It gave the elements, the essential elements of extortion, and that's where you can see the argument of the government. You can even see my argument that we all went down this wrong path. And because of that very erroneous jury instruction, reversal is required. Thank you. Roberts. Roberts.   Roberts. Roberts.   Roberts. Roberts. Roberts. Roberts. Roberts. Roberts. Roberts. Roberts. Roberts. Roberts. Roberts.       Roberts. Roberts. Roberts. Roberts. Roberts. Roberts. Roberts Roberts.
judges: Ikuta, Hurwitz, McShane